UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:   Ralph F. Holly
         Melonee L. Monson                Case No. 12-33873
                                          Chapter 7
                    Debtors.              Honorable Daniel Opperman
_____/

Ralph F. Holley and Melonee L. Monson,

                    Appellants,

v.                                        Case No. 15-12144
                                          Honorable Sean F. Cox
Collene Corcoran, Chapter 7 Trustee,

                    Appellee.
_____/

## OPINION & ORDER

This is a bankruptcy appeal from a Chapter 7 proceeding. The Court finds that the facts and legal arguments are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019; Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court shall AFFIRM the bankruptcy court's rulings.

### BACKGROUND

On September 25, 2012, Debtor Ralph Holley filed a Chapter 7 voluntary petition for bankruptcy, as an individual, in the United States Bankruptcy Court, Eastern District of Michigan. The action was assigned to the Honorable Daniel Opperman, United States Bankruptcy Judge, and was assigned as Case No. 12-33873. The petition was filed by Melonee Monson-Holley, an attorney who is married to Ralph Holley.

1

Melonee Monson-Holley later filed her own case (Case No. 13-30577), and both cases were ultimately jointly administered by Judge Opperman pursuant to a June 3, 2013, Order for Joint Administration, under the lead case, Case No. 12-33873.

By virtue of orders issued by the bankruptcy court on December 17, 2013 and December 18, 2013, real property that the Debtors owed in West Bloomfield Michigan ("the Residence") was sold by the Trustee.

**Opinion Regarding Payment of Administrative Expenses**

At a February 25, 2015 hearing, "the Debtors raised the issue of whether the Trustee could pay administrative expenses in this case when funds to pay such were generated from the Trustee's administration of an asset for the benefit of secured creditors only." (*See* D.E. No. 361 at 5). Judge Opperman ordered the parties to brief that issue. (*Id.*). He later issued a written "Opinion Regarding Issue of the Impact on the Payment of Administrative Fees when Claims Administered by the Chapter 7 Trustee are Secured Only." (D.E. No. 361).

In that Opinion, Judge Opperman first described the parties' competing positions on the issue as follows:

> It is the Debtors' position that the Trustee's administrative expenses can only be paid from assets administered for the benefit of unsecured creditors, not for the benefit of secured creditors only. Debtors assert that because proceeds from the sale of the Residence are fully exempt, such can only be used to pay joint secured creditors, not administrative claims.
> The Trustee first argues that Debtors do not have standing to object to her Final Report . . . If Debtors do have standing to object, the Trustee argues that there is not prohibition for payment of administrative claims only when secured creditors will benefit.

(*Id.* at 5).

The bankruptcy court rejected the Trustee's standing argument and then went on to

2

analyze the "second issue [of] whether the Trustee may properly administer an estate asset for the benefit of secured creditors and administrative claims only." (*Id*. at 7-8).

The bankruptcy court held "that the administrative expenses in this case are properly paid from funds generated by the Trustee's sale of the Residence." The bankruptcy court concluded that the payment of the administrative expenses from the funds generated by the sale of the Residence "is not an exemption surcharge issue, as in the *Siegel* case [cited by the Debtors]; rather, it is an equitable issue of laches and the Court's authority under 11 U.S.C. § 105(a) to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . to prevent an abuse of process.'" (*Id*. at 10). After explaining the circumstances surrounding the sale of the Residence and the Debtors' role in it, the bankruptcy court concluded that the Debtors had "realized the full benefit of their allowed exemption under Michigan law" and held that administrative expenses could be paid from the sales proceeds.

### The Bankruptcy Court's Order on Debtors' Motion for Reconsideration

On April 22, **2015,** Debtors filed a "Motion for Reconsideration of [the Bankruptcy Court's] Orders Dated December 17, December 18, **2013** Regarding Allowing The Trustee to Sell Debtor's Primary Residence." (emphasis added). That two-page motion was not accompanied by a brief and did not attach any exhibits. The motion stated that it was made pursuant to Fed. R. Civ. P. "60(b)" without specifying any subsections of the Rule.

The bankruptcy court denied that motion in a written "Order Denying Debtors' Motion for Reconsideration of Court's Orders Dated December 19, 2013 (Docket # 219) and December 22, 2013 (Docket #222)." (D.E. No. 359).

### Debtors' Notice of Appeal

3

On June 12, 2015, the Debtors filed a Notice of Appeal, appealing "from the orders of the Bankruptcy Judge denying Debtor's Motion for Reconsideration (docket 359) entered on May 28th 2015, Opinion and Orders regarding Debtors Exempt property (dockets 361, 362, 363)" that were entered on May 29, 2015, and June 3, 2015.  (D.E. No. 1 in the Bankruptcy Appeal Case at Pg ID 3).  Thus, the Debtors appealed only two orders: 1) the Motion for Reconsideration (D.E. No. 359); and 2) the bankruptcy court's order wherein it held "that the administrative expenses in this case are properly paid from funds generated by the Trustee's sale of the Residence." (D.E. No. 361 at 10).

Notably, *the Debtors did not appeal the actual orders that authorized the Trustee to sell the Residence* (ie., the December 17, 2013 Order and the December 18, 2013 order reducing the price at the Debtors' request) – likely because the Debtors stipulated to the entry of the December 17th order (*see* D.E.  No. 218) and the Debtors themselves requested the December 18th order (*see* D.E. No. 222).

## STANDARD OF REVIEW

The standard of review that applies in a bankruptcy appeal to a district court is as described in *Results Systems Corp. v. MQVP, Inc*., 395 B.R. 1 (E.D. Mich. 2008):

> District courts must apply a de novo standard of review in bankruptcy appeals when evaluating conclusions of law.  *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988). However, findings of good or bad faith are considered to be factual findings. *See Adell v. John Richards Homes Bldg. Co.*, 439 F.3d 248, 254 (6th Cir. 2006) (determination by bankruptcy court that involuntary petition was filed in bad faith is question of fact which will be reversed if found to be clearly erroneous). Thus, findings of fact are reviewed under the "clearly erroneous" standard. Fed. R. Bankr.P. 8013; Fed.R.Civ.P. 52; *Riverview Trenton Railroad Co. v. DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007).

*Id.* at 4.

## ANALYSIS

In this bankruptcy appeal, the Debtors appealed just two orders of the bankruptcy court: 1) the Motion for Reconsideration (D.E. No. 359); and 2) the bankruptcy court's order wherein it held "that the administrative expenses in this case are properly paid from funds generated by the Trustee's sale of the Residence." (D.E. No. 361 at 10). Challenges to those orders are properly before this Court on appeal and will be addressed below.

But the Debtors' appellate brief also seeks to raise a third issue that is not directed at either of the orders that they appealed – whether the bankruptcy court erred in allowing the Trustee to sell the residence. (*See* Appellants' Br. at 2, 3 & 8). That issue is not properly before this Court because the Debtors did not appeal the orders that authorized the Trustee to sell the Residence.

### I. Did the Bankruptcy Court Err in Denying Debtor's Motion for Reconsideration?

In arguing that the bankruptcy court erred in denying their Motion for Reconsideration, the Debtors assert that they "rely on Fed. Rule 60(b)(2) a[n]d 60(b)(6)." (App. Br. at 7).

To the extent that the Debtors argue that their Motion for Reconsideration should have been granted pursuant to Fed. R. Civ. P. 60(b)(2), that argument must be rejected. A Rule 60(b)(2) motion may be granted if the movant shows "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). The Debtors never apprised the bankruptcy court that their motion was made pursuant to subsection (b)(2) and Debtors did not attach any exhibits or provide the court with any newly discovered evidence. Moreover, even if the motion had been brought pursuant to subsection (b)(2) it would be untimely under Rule 60 because it was not

within a year of the entry of the orders at issue. Fed. R. Civ. P. 60(c)(1).

That leaves subsection (b)(6), which allows the court to grant the motion for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). That clause, however, only applies in unusual and extreme situations. The Sixth Circuit "adheres to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989)). In addition, a party may not use a Rule 60(b) motion as "a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise." *Id*.

The party seeking to invoke the rule bears the burden of establishing that its prerequisites are satisfied. *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001).

The bankruptcy court's denial of a Rule 60(b)(6) motion is examined for an abuse of discretion, "which is 'especially broad' given the underlying equitable principles involved." *Id.*

Here, the bankruptcy found that the Debtors' motion did not establish the existence of any exceptional or extraordinary circumstances that would warrant the relief requested – especially since the Debtors had fully participated in the proceedings that led up to the entry of both of the orders at issue. This Court AFFIRMS the bankruptcy court's denial of the Debtors' Motion for Reconsideration.

**II.     Did the Bankruptcy Court Err in Allowing the Chapter 7 Trustee to Pay The Administrative Expenses?**

The *Siegel* case, referenced in the Opinion at issue, provides a helpful backdrop as to what occurred in this Chapter 7 bankruptcy:

> Chapter 7 of the Bankruptcy Code gives an insolvent debtor the opportunity to discharge his debts by liquidating his assets to pay his creditors. 11 U.S.C. §§ 704(a)(1), 726, 727. The filing of a bankruptcy petition under Chapter 7

> creates a bankruptcy "estate" generally comprising all of the debtor's property. § 541(a)(1). The estate is placed under the control of a trustee, who is responsible for managing liquidation of the estate's assets and distribution of the proceeds. § 704(a)(1). The Code authorizes the debtor to "exempt," however, certain kinds of property from the estate, enabling him to retain those assets post-bankruptcy. § 522(b)(1). Except in particular situations specified in the Code, exempt property "is not liable" for the payment of "any [prepetition] debt" or "any administrative expense." § 522(c), (k).
>
> Section 522(d) of the Code provides a number of exemptions unless they are specifically prohibited by state law. § 522(b)(2), (d). One, commonly known as the "homestead exemption," protects up to $22,975 in equity in the debtor's residence. . . The debtor may elect, however, to forgo the § 522(d) exemptions and instead claim whatever exemptions are available under applicable state or local law. § 522(b)(3)(A). Some States provide homestead exemptions that are more generous than the federal exemption; some provide less generous versions; but nearly every State provides some type of homestead exemption.

*Law v. Siegel,* 134 S.Ct. 1188, 1192-93 (2014).

Thus, the Trustee in this case was responsible for managing the liquidation of the estate's assets. With respect to the Residence, the Debtors had the choice of whether they would elect to take the federal "homestead exemption" or an exemption provided under Michigan law.

Either way, however, the Debtors do not get to just retain their home. It is be liquidated (sold) and they just get to retain a portion of the proceeds – the amount of the exemption.

The federal or state exemption that the Debtors elect determines the amount that they get to retain.

Here, the Debtors changed the exemptions they claimed during the course of the bankruptcy proceeding. It appears that they first tried to claim an exemption under Mich. Comp. Laws § 600.5451(l)(o), the Michigan tenancy by the entireties exemption. But the bankruptcy court disallowed that exemption due to there being substantial joint unsecured debt. (*See* D.E.

No. 275 at 3).  The Debtors later amended their exemptions, and ultimately[1] elected Michigan's exemption under Mich. Comp. Laws § 600.5451(1)(n).[2]  (*Id*. at 7).  The Trustee objected to their claiming that exemption but the bankruptcy court denied the Trustee's objection.  (*Id*.).

The exemption ultimately elected by the Debtors, Mich. Comp. Laws § 600.5151(1)(n), allows a debtor to keep $30,000 in value, but that amount is adjusted for inflation (*see* Trustee's Ex. C).  Thus, the Trustee persuasively argues in her brief that the total exemption that the Debtors would have been entitled to was $70,600 ($35,300 + $35,300).  (Appellee's Br. at 3)

However, there was not just a regular liquidation sale of the Residence here.  The Trustee found a third-party buyer for the Residence who was willing to pay $451,000 for it.  If that sale had gone through, the Debtors would have received an exemption in the amount of $70,600 from the proceeds of the sale.

But before such a sale at that price occurred, the Debtors filed an emergency motion asking the bankruptcy court to lower the sales amount – to allow Debtors the opportunity to arrange a transaction wherein the Trustee would sell the property to a purchaser chosen by the Debtors who would then sell the property to the Debtors under a land contract.  (*See* D.E. No. 210).  On December 18, 2013, the bankruptcy court granted the relief requested by the Debtors and "entered an Order allowing a reduction in the sale amount," to the reduced amount of $315,000 that the Debtors had requested in their motion, "to allow Debtors the opportunity to repurchase the Residence."  (D.E. No. 361 at 3).

---

[1]*See* September 8, 2013 amended schedules, Schedule C.  (D.E. No. 115) (listing exemption as Mich. Comp. Laws § 600.5451(1)(n).

Accordingly, the bankruptcy court reduced the approved sales price by $136,000 – at the Debtors' request – so that they could arrange a transaction wherein they could repurchase the property. Moreover, during the course of the proceedings, Judge Opperman "inquired of the Debtors whether they wished to have the Residence sold at a higher price with the difference paid to them, but they declined that option and choose the route ultimately taken in this case." (D.E. No. 361 at 9).

Given the route the Debtors chose, the bankruptcy court concluded that the Debtors "realized the full benefit of their allowed exemption under Michigan law" and that sales proceeds could be used towards administrative expenses. (D.E. No. 361 at 10).

The bankruptcy court concluded that doing so does not violate the rule of *Siegel* (*Id.* at 8) and this Court agrees.

In *Siegel*, the bankruptcy court concluded that the debtor engaged in fraudulent conduct, that caused the trustee to incur significant expenses related to the sale of the debtor's property. The bankruptcy court granted the trustee's motion to "surcharge" the entirety of the debtor's claimed exemption ($75,000) and allowed that money to be used to pay the trustee's administrative expenses. The Supreme Court ultimately ruled that action exceeded the bankruptcy court's powers because although 11 U.S.C. § 105(a) allows the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, it does not allow the court to "contravene specific statutory provisions." *Siegel,* 134 S.Ct. at 1194. Thus, the bankruptcy court erred in taking the entire amount of the claimed exemption and using it to pay the trustee's administrative expenses.

This is not a case like *Siegel*, where the bankruptcy court simply used the amount of the

debtor's claimed exemption to pay administrative expenses. Here, the debtors got the full value of their allowed exemptions – and then some – by their chosen actions. If the property had been sold on the open market it would have been sold for $451,000 and the Debtors would have received $70,600 from those proceeds. But because the Debtors asked that the property be sold to their chosen purchaser (so that they could in turn buy the property on a land contract), the estate received $136,00 less than it would have received had the property been sold on the open market. Thus, the Debtors received the benefit of the ability to stay in the residence and a sales price reduced by $136,000.

Because the Debtors chose the route taken in this case with respect to the property, and received a benefit that was greater than their allowable exemption, the bankruptcy court concluded this was not an exemption surcharge issue. Rather, it was an equitable issue and that the bankruptcy court had the authority under 11 U.S.C. § 105(a) to allow administrative expenses to be paid from the sales proceeds.

This Court therefore AFFIRMS the bankruptcy court's ruling.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that the bankruptcy court's orders are AFFIRMED.

        S/Sean F. Cox
        Sean F. Cox
        United States District Judge

Dated: December 18, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 18, 2015, by electronic and/or ordinary mail.

        S/Jennifer McCoy
        Case Manager